FILED

2014 Feb-26  AM 11:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH COOPER, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:13-cv-1651-KOB** |
| **SOUTHWEST MARINE AND** | ) | |
| **GENERAL INSURANCE COMPANY,** | ) | |
| **ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This matter comes before the court upon two motions to dismiss. Defendants National Claim Services, Inc. and John Northrop (collectively "NCS Defendants") filed their "Motion to Dismiss Amended Complaint" on October 16th, 2013. (Doc. 14). On the same day, defendants Southwest Marine and General Insurance Company; ProSight Specialty Management Company, Inc.; ProSight Specialty Insurance Group, Inc.; ProSight Insurance Solutions, LLC; and Ahmad Toussaint (collectively "Southwest Defendants") filed their "Motion to Dismiss Amended Complaint." (Doc. 15).

The plaintiffs, Joseph Cooper and Cooper Construction, assert negligence and wantonness claims against each of the defendants for various decisions that allegedly caused construction on six major public projects in Alabama to stall. Cooper Construction additionally asserts a breach of contract claim against each of the defendants on the same grounds. Because the bases for dismissal in each motion are similar, this court addresses both motions to dismiss in a single memorandum opinion.

1

For the following reasons, the court will GRANT in part and DENY in part both motions to dismiss.

## I. FACTS

### A. PARTIES

Joseph Cooper is the sole owner of QCC, Inc., an Alabama corporation doing business as "Cooper Construction." Both Joseph Cooper and Cooper Construction are plaintiffs in this case. Defendant Southwest Marine and General Insurance Company is an Arizona corporation that agreed to act as a surety on Cooper Construction's bonded construction contracts. The remaining six defendants are all described in the complaint as "agents" of Southwest, each of whom allegedly handled and administered defendant Southwest's surety agreement.

These remaining defendants include the following parties: (1) ProSight Specialty Management Company, Inc., a New York corporation; (2) ProSight Specialty Insurance Group, Inc., a New York corporation; (3) ProSight Specialty Insurance Solutions, LLC, a New Jersey company; (4) National Claim Services, Inc., a Georgia corporation; (5) John Northrop, the manager of the surety claims department at National Claim Services; and (6) Ahmad Toussaint, a claims representative at one of the ProSight entities.[1] Because the complaint is unclear as to

---

[1] Ahmad Toussaint's affidavit, appended to the Southwest Defendants' original Motion to Dismiss, (doc. 8), clearly states that Mr. Toussaint worked for ProSight Specialty Management Company. Despite the availability of this information prior to the time the plaintiffs filed their Amended Complaint, (doc. 12), the amended complaint states that the plaintiffs are unsure which of the three closely intertwined groups actually employed Mr. Toussaint because all three ProSight entities shared offices in New York and New Jersey. (*Id.* at ¶ 9). Because this court is addressing a motion to dismiss and not a motion for summary judgment, the court will look only to the plaintiffs' complaint in rendering its decision, which attributes Ahmad Toussaint's actions to all three ProSight entities collectively.

which ProSight entity actually employed Mr. Toussaint, the court will at times refer to all three ProSight entities collectively as "ProSight Insurance."

## B. BACKGROUND

The following is a summary of the facts outlined in the amended complaint and stated in the light most favorable to the plaintiffs. On January 22, 2010, Cooper Construction entered into an indemnity agreement with Southwest. Pursuant to the indemnity agreement, Southwest agreed to act as a surety on the future bonds into which Cooper Construction would enter. After the completion of the agreement, Cooper Construction entered into six substantial construction contracts with various government entities, each with Southwest acting as surety.[2]

The events giving rise to this litigation began in 2011 when a subcontractor on one of the projects submitted a nonpayment claim to Southwest. The subcontractor claimed Cooper Constructed owed it less than $4,000. Cooper Construction alleges that the subcontractor was in

---

[2] Cooper Construction entered the first contract, a Performance and Payment Bond with the City of Gadsden for the construction of a trolley station, on January 27, 2010. On April 30, 2010, Cooper Construction signed the second contract, an agreement to construct a Jet Engine Shop for the Air National Guard in Birmingham, Alabama. On July 29, 2010, Cooper Construction entered into the third contract, a Labor and Material Bond with the City of Hueytown for the construction of Hueytown Senior Center. On September 30, 2010, Cooper Construction signed the fourth contract, a Performance and Payment Bond with the Armory Commission of Alabama for the construction of an "Improvised Explosive Device" (IED). On October 7, 2010, Cooper Construction entered into the fifth agreement, a Performance and Payment Bond with the Shelby County Commission for the construction of a Hangar Installation at the Shelby County Airport. On October 21, 2010, Cooper Construction entered into the sixth and final contract, a Performance and Payment Bond with the Alabama Department for Transportation for the construction of a salt brine facility in Birmingham Alabama. Both Cooper Construction and Southwest participated in each of these agreements with the various government entities listed above with Cooper Construction acting as principal and Southwest acting as surety.

3

fact fully paid. Southwest did nothing to verify the claim's veracity. Despite the relatively small amount of the claim and the fact that it was never corroborated, defendant John Northrop, the manager of the surety claims department at defendant National Claim Services, sent letters on July 28, 2011 to each of the property owners on Cooper Construction's six projects (including one project for which construction was complete). The letters directed the property owners to stop making payments directly to Cooper Construction and stated that Southwest had engaged National Claim Services to handle matters relating to the bonds in the property-owner's construction projects.

As a result of these letters, Cooper Construction's five remaining construction projects effectively shut down. Although Cooper Construction apparently was not completely denied payment for the work it had completed, the delay in waiting for Southwest to sign off on payments before Cooper Construction could receive any money caused Cooper Construction to be unable to pay the other subcontractors working on the five continuing construction projects. Separate litigation between Cooper Construction and its subcontractors subsequently ensued.

Sometime between July of 2011 and January of 2012, Southwest engaged defendants ProSight Insurance to replace National Claim Services in handling its bonds claims. (Doc. 12, at ¶¶ 9, 23). In January of 2012, defendant Ahmad Toussaint, an employee of Prosight Insurance, informed Joseph Cooper and Cooper Construction of the change and directed all future correspondence related to any bond claims be sent to him. Despite his instruction, however, Mr. Toussaint was not responsive to Cooper Construction's attempts to communicate.

The plaintiffs allege that throughout 2012 and up to the time this litigation began, Mr. Toussaint regularly failed to return e-mails, calls, and messages for months at a time—sometimes

failing to respond entirely. Because Southwest had to authorize any payments before Cooper Construction could receive money, Mr. Toussaint's failure to respond to communications exacerbated the damages caused by the delay, causing the construction projects to sit stagnant for long periods of time and forcing plaintiff Joseph Cooper to pay numerous subcontractors out of his own pocket.

The plaintiffs allege that as a result of the conduct of all of the defendants, Cooper Construction was unable to finish its projects in a timely manner, compromising Mr. Cooper's standing in the construction business and causing him substantial hardship and mental anguish. Mr. Cooper points to at least one newspaper article that identified him personally and discussed Cooper Construction's inability to complete a construction project on time. In addition, the plaintiffs allege that the defendants' conduct caused a delay in payment that significantly damaged Mr. Cooper's relationships with the subcontractors with whom he had regularly done business. As a result of the defendants' conduct, Mr. Cooper also had to lay off a trusted and respected employee because he was unable to pay her. Finally, Mr. Cooper claims that his 800+ credit score was substantially damaged as a result of the defendants' actions.

### C. COUNT 1: BREACH OF CONTRACT

In Count I of the amended complaint, Cooper Construction accuses all of the defendants of breach of contract. The plaintiff alleges that by sending letters and halting payment on six different construction projects (one of which was already finished) based on nothing more than one unverified claim of nonpayment involving less than $4,000.00, Southwest, through its agents National Claims Services and John Northrop, breached the bond and surety agreements with Cooper Construction and caused Cooper Construction damages.

Similarly, Cooper Construction alleges that by assuming authority to handle claims arising out of the surety agreements and subsequently failing to adequately or appropriately handle (or sometimes even address) such claims, ProSight Insurance and Ahmad Toussaint, acting as agents for Southwest, breached the contract, causing Cooper Construction damages.

### D. COUNTS II–III: NEGLIGENCE AND WANTONNESS CLAIMS

In Counts II–III of the amended complaint, Cooper Construction and Joseph Cooper accuse all of the defendants of negligence and wantonness. The plaintiffs allege that by sending letters and halting payment on the six construction projects based on nothing more than one unverified claim of nonpayment involving less than $4,000.00, John Northrop, National Claim Services, and Southwest all negligently breached their duty to (Count II) and/or acted with a conscious or reckless disregard of the rights of (Count III) Cooper Construction and Joseph Cooper. The plaintiffs allege that this decision proximately and foreseeably caused both plaintiffs extensive damages, personal hardship, and mental anguish.

Similarly, the plaintiffs allege that by delaying and at times failing to respond to claims pertaining to the bonds, defendants ProSight Insurance, Ahmad Toussaint, and Southwest all negligently breached their duty to (Count II) and/or acted with a conscious or reckless disregard of the rights of (Count III) Cooper Construction and Joseph Cooper. The plaintiffs allege that this failure proximately and foreseeably caused both plaintiffs extensive damages, personal hardship, and mental anguish.

## II. STANDARDS OF REVIEW

Both motions to dismiss are brought under the Federal Rules of Civil Procedure pursuant to Rule 12(b)(6), allowing dismissal for failure to state a claim upon which relief can be granted,

and Rule 12(b)(2), allowing dismissal for lack of personal jurisdiction.

### A. FAILURE TO STATE A CLAIM

Under the Federal Rules of Civil Procedure, a defendant is entitled to dismissal if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rules only require a plaintiff to submit "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P 8(a)). However, the Supreme Court has explained that the complaint must be more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" without supporting factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). Thus, while the plaintiff need not provide detailed factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal citations omitted).

In deciding whether a complaint can withstand a motion to dismiss, the court applies two guiding principles outlined by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). First, although the court must accept as true all of the factual allegations contained in a complaint, this rule is "inapplicable to legal conclusions"—even when legal conclusions are "couched as factual allegation[s]." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Thus, the court's first task is to determine the factual allegations that are well-pled and assume their veracity.

Once the court has done this analysis, the second task is to determine whether the claim is plausible on its face given the well-pled facts. *Iqbal*, 556 U.S. at 679. A claim is plausible on its face if it contains enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In other words, the facts must

demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Ultimately, unless the court determines that well-pled facts, accepted as true, state a claim that is plausible, the claim must be dismissed. *Id.*

### B. LACK OF PERSONAL JURISDICTION

A Rule 12(b)(2) motion attacks the court's jurisdiction over the defendant's person. In determining whether personal jurisdiction exists, a federal court sitting in diversity undertakes a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "The plaintiff bears the burden of establishing personal jurisdiction over the defendant [but] 'need only make a prima facie showing.'" *S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990)).

If, in a motion to dismiss, the defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Mazer*, 556 F.3d at 1274 (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). While the burden may thus rest on the plaintiff to produce contrary evidence, when "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269.

### III. DISCUSSION

The plaintiffs filed an amended complaint on October 2, 2013. (Doc. 12). Both the NCS Defendants and the Southwest Defendants filed motions to dismiss the amended complaint on

October 16, 2013. (Doc. 14; Doc. 15). Both sets of defendants incorporated prior motions to dismiss each had filed before the plaintiffs amended their complaint. (Doc. 8; Doc. 10). The court thus will address all relevant arguments in the prior motions to dismiss as well as all of the arguments raised in the motions to dismiss the amended complaint. The court will first discuss claims applicable to both the NCS Defendants' and the Southwest Defendants' motions to dismiss, and will then address the separate claims raised by each set of defendants.

## A. DEFENSES COMMON TO BOTH THE NCS DEFENDANTS AND THE SOUTHWEST DEFENDANTS

### (i) STATUTE OF LIMITATIONS

Both motions to dismiss allege that the statute of limitations for the negligence and wantonness claims had run by the time the plaintiffs filed the lawsuit. Under Alabama law, the statute of limitations for negligence and wantonness is two years. Ala. Code § 6-2-38 (1975). The defendants argue that because the alleged negligence and/or wantonness began when John Northrop sent the letters to stop payment on July 28, 2011 and the plaintiffs failed to file suit until July 29, 2013, the negligence and wantonness claims are barred. Because no party disagrees that July 28, 2011 was the operative date when the cause of action for negligence and/or wantonness began to accrue, the only question is whether the plaintiffs' failure to file by July 28, 2013 bars their claims on those causes of action.

Calculating the statute of limitation is a matter of state substantive law. *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945). Consequently, the court must look to Alabama law to determine whether the plaintiffs' claims were timely. Under the Alabama Rules of Civil Procedure, the court must calculate the statute of limitations to include the last day in which the

action is filed "unless it is a Saturday, a Sunday, or a legal holiday, in which event the period

runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday." Ala. R.

Civ. P. 6(a). In this case, July 28, 2013 was a Sunday. Thus, because the plaintiffs filed the case

on the next day, Monday, July 29, 2013, the negligence and wantonness claims are not due to be

dismissed against any defendant as untimely.

(ii) FAILURE TO STATE A CLAIM BY PLAINTIFF JOSEPH COOPER

In the NCS Defendants' motion to dismiss, they argue that Mr. Cooper's amended

complaint fails to state a claim because the only injuries he alleges are incidental to his status as

the sole owner of Cooper Construction. Although the Southwest Defendants did not raise this

issue in their motion to dismiss, "'a federal court is obligated to inquire into subject matter

jurisdiction *sua sponte* whenever it may be lacking.'" *Bochese v. Town of Ponce Inlet*, 405 F.3d

964, 975 (11th Cir. 2005) (quoting *Univ. of S. Ala. v. Am. Tobacco* Co., 168 F.3d 405, 410 (11th

Cir. 1999)); *see also Florida Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th

Cir. 1999) ("[E]very court has an independent duty to review standing as a basis for jurisdiction

at any time, for every case it adjudicates.")). Because the standing of Mr. Cooper to bring

individual claims affects both the NCS Defendants and the Southwest Defendants, the court will

exercise its obligation to evaluate its jurisdiction and decide this issue for the entire case.

Article III of the United States Constitution requires a plaintiff filing suit in federal court

to demonstrate that the defendant caused the plaintiff to suffer an "invasion of a *legally protected*

interest," and that the courts have the power to redress the harm. *Lujan v. Defenders of Wildlife*,

504 U.S. 555 (1992) (emphasis added). Because all of the causes of action at issue in this case

arise under state law, this court must look to Alabama law to determine whether Joseph Cooper

suffered an injury to a legally protected right. *See, e.g.*, *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007) ("The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law.).

Under Alabama law, the question of which injuries belong to an individual and which injuries belong to a corporation comes down to whether the injuries are incidental to the individual's status as a shareholder in the corporation. *Pegram v. Hebding*, 667 So. 2d 696 (Ala. 1995); *see also Cook v. Trinity Universal Ins. Co. of Kansas*, 297 F. App'x 911, 913 (11th Cir. 2008) ("Generally, status as a corporate shareholder will *not* give an individual standing to prosecute a claim on behalf of a corporation."). Thus, "when individual damages sought to be recovered by a plaintiff are incidental to his or her status as a stockholder in a corporation, the claim is a derivative one and must be brought on behalf of the corporation." *Pegram*, 667 So. 2d at 702; *see also General Motors Corp. v. Bell*, 714 So. 2d 268, 290 (Ala. 1996). To recover on behalf of the shareholder individually, the "shareholder [must] show[] a violation of a *duty owed directly to him*." *Cook*, 297 F. App'x at 913 (emphasis added).

In this case, Mr. Cooper fails to demonstrate that the defendants owed him a duty of care individually. In addition to citing no case law supporting his claim that defendant corporations owe shareholders of a plaintiff corporation a duty of care apart from the duty of care owed to the shareholders' corporation itself, Mr. Cooper also fails to allege any facts that demonstrate he ever interacted with the defendants in a capacity other than as sole owner of Cooper Construction. More importantly, even if this court assumes the veracity of all of the injuries Mr. Cooper alleges he suffered individually, the injuries are all still derivative of the injuries Cooper Construction

11

experienced. The money Mr. Cooper personally paid to the subcontractors on behalf of the corporation, for example, is money Cooper Construction is entitled to seek in damages from the defendants. Similarly, any injury Mr. Cooper claims he experienced as a result of the ensuing litigation with Cooper Construction's subcontractors is really an injury Cooper Construction can claim against the defendants. Finally, even the reputational damage Mr. Cooper cites is a redressable injury of the corporation's good will. In all of these instances, Cooper Construction could seek remedies for the same injuries, and thus, Joseph Cooper has no standing to do so individually.

While the emotional distress and individual reputational damage Mr. Cooper allegedly suffered ostensibly appear to be more personal in nature, Alabama law recognizes that even personal injuries can still be incidental to one's status as a sole shareholder. In *General Motors Corp. v. Bell*, 714 So. 2d 268 (Ala. 1996), the Alabama Supreme Court held that the trial court had erred in allowing the sole owner's individual emotional distress claims to go to the jury because the conduct that allegedly caused the emotional distress was the same conduct for which the company sued the defendants. Although the sole owner's distress at watching his company go out of business may have been legitimate and justifiable, the owner ultimately could not recover individually for his injury because it was incidental to his status as a sole owner of the company.

In this case, because both Mr. Cooper and Cooper Construction are suing the defendants for the same alleged misconduct and Mr. Cooper cannot show that the defendant owed him a duty of care individually, Mr. Cooper's more personal injuries—including those dealing with Mr. Cooper's credit score and personal mention in a local newspaper—are still considered incidental to his status as a sole shareholder under Alabama law. As a result, this court must treat Mr.

12

Cooper's injuries as derivative of those experienced by the corporation and find that he does not have standing to bring them on his own behalf.

The court will, thus, DISMISS WITH PREJUDICE all claims Mr. Cooper brought individually against all of the defendants. In analyzing the remaining grounds for dismissal, therefore, the court will address only the claims brought by Cooper Construction against the defendants.

### (iii) LACK OF PERSONAL JURISDICTION OVER DEFENDANTS JOHN NORTHROP AND AHMAD TOUSSAINT

Also at issue in both motions to dismiss is whether this court can exercise personal jurisdiction over certain non-resident employees whose alleged negligence and wantonness caused Cooper Construction injuries. Both sets of defendants argue that exercising personal jurisdiction over the individually-named employees in this case is improper because the contact these employees had with the forum state was insufficient to satisfy the demands of due process.

To determine whether a federal court sitting in diversity can exercise personal jurisdiction over an individual defendant, this court must first examine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Second, this court must ensure that even if appropriate under the forum state's laws, the exercise of jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment. *Id.*

Under the Alabama Rules of Civil Procedure, jurisdiction over an out-of-state defendant is lawful only when the defendant "has such contacts with [the forum] that the prosecution of the action against the [defendant] . . . is not inconsistent with the constitution of [Alabama] or the

Constitution of the United States." Ala. R. Civ. P. 4.2(b) (2012). Alabama courts have consistently interpreted this provision of the long-arm statute to authorize personal jurisdiction to the extent permissible under the Due Process Clause of the Fourteenth Amendment. *See* Ala. R. Civ. P. 4.2, Committee Comments to Rule 4.2 Amendment; *see also Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)*; Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001); *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993). Thus, this court need only examine whether exercising jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. The "focal point of [the due process analysis] is the alleged 'contacts' which a defendant has with the forum state." *Duke v. Young*, 496 So. 2d 37, 39 (1986); *see also Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (holding that "due process of law" requires only "certain minimum contacts" with the forum such that the exercise of personal jurisdiction does not "offend traditional notions of fair play and substantial justice").

To demonstrate that a non-resident employee of a foreign corporation has sufficient contacts with a forum state to justify extending personal jurisdiction over the employee, a plaintiff cannot rely completely upon the fact that the employee's contacts with the forum state gave rise to the litigation. *Thames v. Gunter-Dunn, Inc.*, 373 So. 2d 640 (Ala. 1979). "While it is sometimes proper to hold that a foreign corporation . . . whose agents acted in Alabama, and caused ramifications in this state, has sufficient contacts with the state to warrant jurisdiction, it is a *totally different matter* to hold that *individual officers* have such minimum contacts." *Id.* at 643 (emphasis added).

Indeed, the Alabama Supreme Court suggests that no jurisdiction exists when the employee's contact with the forum was solely on behalf of a bona fide corporation, the employee

14

had never been to the forum state, and the claim against the employee was for unintentional misconduct. *See Thames*, 373 So. 2d at 643 (holding Alabama did not have personal jurisdiction over non-resident bank agents who were acting solely on behalf of the bank, had never been to Alabama, and were not conducting personal business); *see also Pierce v. Heyman*, 480 So. 2d 1185 (Ala. 1985) (holding that Alabama had no personal jurisdiction over non-resident claim workers who had never been to Alabama and whose only contact with Alabama was in the scope of their employment for an insurance company); *Brooks v. Inlow*, 453 So. 2d 349 (Ala. 1984) (holding that exercising personal jurisdiction over two non-resident employees of an out-of-state corporation would offend the traditional notions of fair play and substantial justice because the employees had never been to Alabama and were charged with mere untargeted negligence); *cf. Duke*, 496 So. 2d at 40 (holding that exercising personal jurisdiction is equitable because the individual directors were accused of conspiring to fraudulently and intentionally conceal a material fact).

At the time of the events giving rise to this litigation, John Northrop was an employee of National Claim Services, (Northrop Aff. ¶ 1), and Ahmad Toussaint was a claims examiner for ProSight Specialty Management Company, (Toussaint Aff. ¶ 1). Both National Claim Services and ProSight Specialty Management Company are non-resident defendants for which personal jurisdiction is not at issue. Neither Mr. Northrop nor Mr. Toussaint has ever been a resident of Alabama, and neither traveled to Alabama on behalf of his employer or in connection with the bonds at issue in this case. (Northrop Aff. ¶¶ 3–6; Toussaint Aff. ¶ 11). Specifically, Mr. Toussaint has never been to Alabama for any reason, business or personal. (Toussaint Aff. ¶ 11).

Although the plaintiff does cite significant contact both Mr. Northrop and Mr. Toussaint have had in Alabama in connection with the events underlying this case, the plaintiff does not allege that either Mr. Northrop or Mr. Toussaint was acting outside the scope of his employment when he allegedly contributed to the plaintiff's injuries. Additionally, the plaintiff does not allege that either Mr. Northrop or Mr. Toussaint is guilty of intentional misconduct that would make exercising personal jurisdiction over him equitable. Instead, all the plaintiff alleges is that these individuals acted negligently or wantonly in the performance of their duties for their employers, and that because such negligence or wantonness had direct effects in Alabama, personal jurisdiction should be extended.

Ultimately, because such claims are in essence the same claims the plaintiff alleges against the companies themselves and no party disputes that Mr. Northrop and Mr. Toussaint were acting purely within the scope of their employment, extending personal jurisdiction over these individuals would offend the traditional notions of fair play and substantial justice. *See Pierce*, 480 So. 2d 1185. Consequently, the court will DISMISS WITH PREJUDICE all claims against Mr. Northrop and Mr. Toussaint individually for lack of personal jurisdiction.

**B. INDIVIDUAL DEFENSES**

Having addressed the common defenses both sets of defendants raised, this court now examines the remaining arguments in each motion to dismiss separately.

### (i) NATIONAL CLAIM SERVICES' MOTION TO DISMISS

Although National Claim Services originally brought a motion to dismiss on behalf of its employee, John Northrop, and the company itself, this court will address the merits of the

16

defenses only regarding National Claim Services because the court does not have personal jurisdiction over Mr. Northrop.

## (1) FAILURE TO STATE BREACH OF CONTRACT CLAIM AGAINST NATIONAL CLAIM SERVICES

In its motion to dismiss, National Claim Services argues that the court should dismiss the breach of contract claim against it because the amended complaint fails to allege that National Claim Services was ever a party to the contract it allegedly breached.

The plaintiff does not dispute that one of the elements it must prove to recover for breach of contract is "the existence of a valid contract binding the parties in the action." *Southern Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995). However, under Alabama law, an agent of a principal is not liable on a contract signed by the principal:

> A duty created by contract is one imposed upon the party to the contract, not directly upon the employee or agent of that party. If an employee or agent acting within the scope of his or her employment or agency acts in a manner that causes the principal to be in breach of the principal's contract, the breach is that of the principal itself, not of the employee, who is not a party to the contract.

*Indus. Dev. Bd. of City of Montgomery v. Russell*, 124 So. 3d 127, 138 (Ala. 2013); *see also Roland v. Cooper*, 768 So. 2d 400 (Ala. Civ. App. 2000) (holding that because an agent of the seller was not a party to the contract, he could not be sued for breach of that contract or for any warranty purported to be implied in that contract).

While the plaintiff claims in its response that National Claim Services is liable as an assignee of the breached contract, the plaintiff fails to allege any facts in the amended complaint that show an actual assignment of rights or duties to any agent occurred. An assignee is "[o]ne to whom property rights or powers are transferred by another." *Ex parte Cox*, 828 So. 2d 295 (Ala.

2002) (quoting *Black's Law Dictionary* 114 (7th ed. 1999)). Far from alleging an actual transfer of rights or duties, the complaint simply refers to National Claim Services as an agent who was employed by Southwest to "handle and administer" the surety agreement and the claims arising therefrom. (Doc. 12, at ¶¶ 7, 28).

Because a motion to dismiss under Rule 12(b)(6) is based on the facts alleged in the complaint and the plaintiffs do not that allege anywhere in the complaint that an actual assignment occurred, the court will DISMISS WITHOUT PREJUDICE the breach of contract claims outlined in Count I against National Claim Services for failure to state a claim. If the plaintiff can plead any facts showing that Southwest actually assigned the duties under the contract to National Claim Services, the court grants the plaintiff leave to amend its complaint on or before **March 12, 2014**.

(2) FAILURE TO STATE A CLAIM AGAINST NATIONAL CLAIM
          SERVICES

National Claim Services also argues that the Cooper Construction failed "in general" to state a claim against it because the complaint did not specifically request relief from National Claim Services; the complaint failed to allege that National Claim Services was not within its rights in sending the letters to the property owners; and finally, the complaint merely alleges that the letters required Southwest to sign off on all payments—not that the letters halted payment altogether. Although National Claim Services raises this argument as a defense to all claims the plaintiff brings against it, this court, having already dismissed the breach of contract claim against National Claim Services, will address the merits of the defense only as to the remaining negligence and wantonness claims in Counts II and III respectively.

As stated previously, all the Federal Rules of Civil Procedure require is "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P 8(a)). The amended complaint satisfies this requirement as to National Claim Services. Contrary to what National Claim Services argues, the plaintiff clearly "demands judgment" in the form of "compensatory damages to be determined by a jury" from National Claim Services for wrongfully sending letters redirecting payment. (Doc. 12 at ¶¶ 32, 35). Similarly, although the amended complaint does not specifically say that National Claim Services was not within its rights in sending the letter, the allegation that National Claim Services' conduct was wrongful is clear from the plaintiff's repeated reference to the fact that National Claim Services sent the letters "based on nothing more than an unverified nonpayment claim involving less than four thousand dollars." (Doc. 12 at ¶¶ 31, 34). Contrary to National Claim Services' argument, the Federal Rules of Civil Procedure do not require "detailed factual allegations" beyond what Cooper Construction clearly outlined in its complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Finally, National Claim Services' argument that the complaint fails to state a claim because it does not adequately allege that the letters National Claim Services sent caused Cooper Construction damages misunderstands the pleading standard. All the plaintiff must show is that its factual allegations, if accepted as true, "raise a right to relief above the speculative level." *Id.* at 557. Accepting as true Cooper Construction's allegation that National Claim Services wrongfully sent letters to property owners on six major projects redirecting payments to Southwest for approval, the court finds that Cooper Construction's right to relief is more than

19

speculative. Contrary to what National Claim Services suggests, Cooper Construction is not required to show that payment stopped completely to show that the letters caused financial damage to the company. The connection between "stopping cash flow," (doc. 12 at ¶ 22), and the injuries Cooper Construction suffered is clear enough from the complaint to meet the pleading requirement in Rule 8.

Ultimately, the allegations in the amended complaint that National Claim Services caused Cooper Construction damages when it sent letters to the construction project property owners redirecting payments to Southwest meets the plausibility standard. For these reasons, therefore, the court will DENY the motion to dismiss for failure to state a claim as to Counts II and III against National Claim Services.

### (ii) DEFENSES THE SOUTHWEST DEFENDANTS RAISE

#### (1) FAILURE TO STATE A CLAIM AGAINST PROSIGHT SPECIALITY MANAGEMENT COMPANY AND PROSIGHT SPECIALTY INSURANCE SOLUTIONS.

The Southwest Defendants, which includes all of the ProSight entities, additionally argue that the court should dismiss all claims against ProSight Specialty Management Company and ProSight Specialty Insurance Solutions because they contend the plaintiff did not plead any facts against those defendants specifically. As stated previously, all the Federal Rules of Civil Procedure require in a complaint is "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P 8(a)). The court finds the amended complaint meets this standard as to each of the ProSight entities in this case.

In the amended complaint, the plaintiff describes each of the three ProSight entities as "agent[s] of Defendant Southwest" who "largely handled and administered Defendant Southwest['s] . . . Alabama surety." (Doc. 12, ¶¶ 4, 5, 6). Similarly, although the plaintiff originally states that Ahmad Toussaint, the employee who allegedly caused the plaintiff damages through unnecessary delay, is an employee of ProSight Specialty Insurance Group, the plaintiff subsequently states in the same paragraph that "it is [actually] unclear whether Defendant Ahmad Toussaint is directly employed by Defendant Prosight Specialty Insurance Group, Inc., Defendant Prosight Specialty Management Company, Inc., or Defendant Prosight Specialty Insurance Solutions, LLC, since the three entities are so closely intertwined, apparently sharing offices in New York and New Jersey." (Doc. 12, ¶ 9). Because the plaintiff is ultimately uncertain with which entity it was dealing during the events that gave rise to the cause of action in this case, it states that "[h]ereinafter, these three Defendants shall be collectively referred to as 'Defendant Prosight Insurance.'" (*Id.*).

In subsequent portions of the amended complaint, the plaintiff alleges specific facts against the Prosight Insurance actors collectively. Most significantly, the plaintiff alleges that Prosight Insurance collectively had an unresponsive claims-handling process that caused Cooper Construction's projects to sit stagnant for long periods of time and forced Mr. Cooper to pay subcontractors out of pocket while waiting on the payments made directly to Southwest to process. (*Id.* at ¶ 24). This court finds that given the unique nature of the relationship between the three ProSight entities in this case (i.e., they are all related and share offices) and the fact that the amended complaint is detailed enough to put all three ProSight entities on notice of the possible claims against each of them, the Southwest Defendants' argument for dismissing all claims

against ProSight Specialty Management Company and ProSight Specialty Insurance Solutions will be DENIED.

### (2) FAILURE TO STATE NEGLIGENCE AND WANTONNESS CLAIMS AGAINST THE SOUTHWEST DEFENDANTS

The Southwest Defendants' motion to dismiss also argues that the court should dismiss Cooper Construction's negligence and wantonness claims against them because Alabama law does not recognize tort-like causes of action for the breach of a duty created by contract. Cooper Construction claims that because the Southwest Defendants' actions constitute misfeasance as opposed to mere nonfeasance, Cooper Construction is entitled to bring breach of contract claims and claims based on negligence and wantonness.

The distinction between tort-based actions and breach of contract actions is often difficult to determine. In *Ex parte Certain Underwriters at Lloyd's of London*, 815 So. 2d 558 (Ala. 2001), the Alabama Supreme Court attempted to clarify some of its seemingly inconsistent decisions by adopting the general rule outlined in *Hamner v. Mutual of Omaha Ins. Co.*, 270 So. 2d 87 (Ala. Civ. App. 1972).

The *Hamner* court stated that when a complaint includes allegations of misfeasance as opposed to mere nonfeasance, the court must examine the "gist or gravamen of the complaint" to determine whether the claim is in tort or in contract. *Hamner*, 270 So. 2d at 90. If the gravamen of the complaint is a breach of contract, "[t]he manner or intent of such breach does not change the form of action, nor as a general rule, add damages not ordinarily recoverable in a breach of contract action." *Id.* Additionally, in making this determination, "[t]he substance of the plaintiff's

22

allegations control, not the effort given by the plaintiff to style the claims throughout litigation." *Elizabeth Homes, LLC v. Cato*, 968 So. 2d 1, 8 (Ala. 2007).

Ultimately, in applying Alabama law, federal courts in Alabama have consistently concluded that where the duty allegedly breached arises from the contract and not from the general duty of care owed to everyone, the court must treat the claim as a breach of contract and not as a tort. *See Blake v. Bank of America, N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012) (holding that the plaintiff's negligence and wantonness claims should be dismissed because the obligations at issue arose from the mortgage and promissory note, "not from the duty of reasonable care generally owed to members of the public"); *see also Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1290 (N.D. Ala. 2013) ("Because the duty Defendant allegedly breached is based on a contract, and because Alabama law does not permit Plaintiff to assert a tort claim against Defendants for their purported breach of a contract, both Plaintiff's negligence and wantonness claims are not actionable under Alabama law."); *McClung v. Mortg. Elec. Reg. Sys., Inc.*, No. 2:11-CV-03621-RDP, 2012 WL 1642209, at *8 (N.D. Ala. 2012) (holding that plaintiffs did not allege a tort claim because all of the alleged duties arose from contracts and Alabama law does not permit a plaintiff to assert a tort claim against a defendant for the purported breach of a contract); *Porterfield v. Flowers Baking Co. of Opelika, LLC*, No. 2:05-CV-937-MEF, 2007 WL 4373006, at *16 (M.D. Ala. 2007) (holding that the tort claim for wrongful termination was inappropriate under Alabama law because all of the plaintiff's claims revolved around rights, obligations, and duties specified in a contract).

Because the plaintiff alleges misfeasance and not mere nonperformance, the court looks to the gravamen of the complaint to determine whether the claims are in tort or in contract.

*Hamner v. Mutual of Omaha Ins. Co.*, 270 So. 2d 87 (Ala. Civ. App. 1972). Taking the facts in the light most favorable to the plaintiff, the court finds that the plaintiff clearly alleges a breach of contract claim. Even accepting as true the plaintiff's allegation that National Claim Services, and by extension Southwest, breached a duty in sending the letters to the six property owners, the source of the duty is undoubtedly the surety agreement, which defines default and outlines the actions Southwest may take in response. Likewise, even if the court accepts that ProSight Insurance exacerbated Cooper Construction's damages by failing to respond to e-mails and other communications, the surety agreement is the document that states what obligations defendants had once they assumed responsibility for managing Cooper Construction's projects. Ultimately, as against all of the Southwest Defendants, the plaintiff's claims arise out of the surety agreement with Southwest.

Because this court, like other federal courts that have interpreted Alabama law, finds that the source of the duty indicates whether the gravamen of the complaint is in tort or in contract, and the source of duty in this case is clearly the surety agreement, the court will DISMISS all claims of negligence and wantonness against all Southwest Defendants.[3]

---

[3] Even though the ProSight Defendants were not signatories on the surety agreement, the negligence and wantonness claims against these defendants is similarly inappropriate under Alabama law. In *Blake v. Bank of America, N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012), the court held that the plaintiff failed to allege a cause of action in tort against the defendant's agent because under Alabama law, a servicing agent "c[an] only incur tort liability . . . by causing personal injury or property damage as a result of the breach of the duty of reasonable care. Pure economic loss . . . does not suffice." Because Cooper Construction does not make any claims of personal injury or property damage, only pure economic loss, the negligence and wantonness claims are properly dismissed as to all the ProSight Defendants.

## IV. CONCLUSION

The court will DISMISS WITH PREJUDICE all of Joseph Cooper's claims against all parties because he lacks standing. The court will also DISMISS WITH PREJUDICE all claims against defendants John Northrop and Ahmad Toussaint for lack of personal jurisdiction.

As against the Southwest Defendants in particular, the court will DISMISS WITH PREJUDICE all negligence and wantonness claims because such claims arise out of the breach of contract claim already asserted against the Southwest Defendants. The court will, however, DENY the Southwest Defendant's motion to dismiss all of Cooper Constructions claims against ProSight Specialty Management Company and ProSight Specialty Insurance Solutions because the court finds that Cooper Construction did meet the pleading standard as to these defendants.

As against National Claim Services, the court will DISMISS WITHOUT PREJUDICE all breach of contract claims because National Claim Services did not sign the contract with Cooper Construction and Cooper Construction failed to allege facts in the complaint showing Southwest had actually assigned its rights and duties under the contract to National Claim Services. If Cooper Construction can plead any facts showing Southwest made an actual assignment of rights or duties to National Claim Services, it has leave to amend its complaint on or before **March 12, 2014**. The court will, however, DENY National Claim Services' argument that the plaintiff failed to state a claim "in general" against National Claim Services for negligence or wantonness.

Ultimately, if Cooper Construction does not amend its complaint, the only remaining claims in this case against Southwest and the three ProSight entities will be for breach of contract, and the only remaining claims against National Claim Services will be for negligence and wantonness. All other claims will be dismissed.

DONE and ORDERED this 26th Day of February, 2014.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE